HIGHSAW v. CREECH et ux.—69 S. W. (2d) 249.

Western Section. November 25, 1933.

Petition for Certiorari denied by Supreme Court, March 10, 1934.

---

[1]Memorandum decision. Not for publication.

Chas. C. Crabtree and F. B. Gianotti, Jr., both of Memphis, for plaintiff in error.

Ewing, King & King, of Memphis, for defendants in error.

SENTER, J.   Robert Highsaw, a minor, sued the defendants below, by his next friend, J. L. Highsaw, for damages resulting from personal injuries sustained by having his eye put out by a shot from an air rifle in the hands of the nine year old son of the defendants below.

The parties will be referred to as in the court below, Robert B. Highsaw by next friend, plaintiff, and Thomas W. Creech and wife, Ethel A. Creech, defendants.   The declaration averred in substance that the defendants gave to their son, Eddie Creech, aged nine years, an air rifle, and that said air rifle was a dangerous instrumentality, and that in using it plaintiff's eye was shot out.   The injury occurred on January 2, 1926.   The declaration avers first, that it was negligence on the part of the parents of their minor son, aged nine years, to give to him and to place in his possession an air rifle, and that said air

rifle was a dangerous instrumentality, calculated to result in an injury. By leave of the court the declaration was subsequently amended so as to aver that Eddie Creech was mentally irresponsible, vicious, and high tempered, which was known to the defendants, or should have been known to them, at the time they gave to him the air rifle and permitted him to use it. It appears that there were two or three other trials of the case before the last trial. The records in the other cases are not before this court on this appeal. The case resulted in a jury verdict in favor of the defendants. A motion for a new trial was overruled, and from the action of the court in overruling and disallowing the motion for a new trial the plaintiff prayed and was granted an appeal in the nature of a writ of error to this court, and has assigned numerous errors. These several assignments of error and the questions presented thereby will be grouped and disposed of.

The first assignment of error cannot be considered because under this assignment it is said that the verdict is contrary to the law and the evidence. It is not contended under this assignment that there was no material evidence to support the verdict. By the second, third, and fourth assignments it is contended that the learned trial judge erred in sustaining exceptions to certain evidence offered by plaintiff, and by which plaintiff sought to prove that the boy, Eddie Creech, had committed certain other acts tending to show that he was irresponsible and vicious. These assignments will later be referred to. By the fifth assignment of error the following ruling made by the trial judge in disposing of an exception to evidence with reference to whether or not the parents of Eddie Creech had given to him warning as to the use of the air gun, is challenged:

"Now, as I have found out in the several trials of this case, that the law is well settled that an air gun, BB gun, is not a dangerous instrumentality in the hands of a boy eight years old, and have so held. Indeed, the authorities have classified it as a toy; that it is a toy; and a warning about it is not, it not being a dangerous instrumentality, is not essential for the parent to give. That is the conclusion that I have reached in reference to this case, and so I sustain an objection on the point as to whether or not he warned him about the instrument."

Under this assignment it is contended by appellant that the above ruling by the court is a correct statement of the law as to toys, but that this air rifle was not a toy but a dangerous instrumentality, capable of producing injury, and that as to whether or not it was or was not a dangerous instrumentality should have been submitted to the jury.

It appears that the court was stating the general rule to the effect that it was not negligence per se to place an eight or nine year old boy in possession of an air rifle, and that an air gun such as given to

this boy was not a weapon but was a toy; was an imitation only of a rifle. Appellant relies upon and cites authorities in support of the contention that a parent who places a dangerous instrumentality in the hands of a very young child, with knowledge that the instrumentality is capable of causing injury to others, is guilty of negligence per se. Among other cases cited and relied upon is that of Dora Smith v. Chas. Salvaggio, etc., 4 Higgins (4 Tenn. Civ. App.); 727. In that case it was held that where the mother permitted a son about nine years of age to have in his possession and to use a deadly weapon, a .22 caliber rifle, she was guilty of negligence and liable for an injury sustained by plaintiff being shot by the minor son with the rifle. In support of the conclusion reached by the court in that case, several authorities are cited: Meers v. McDowell, 110 Ky., 926, 62 S. W., 1013, 53 L. R. A., 789, 96 Am. St. Rep., 475; Binford v. Johnston, 82 Ind., 427, 42 Am. Rep., 508; Carter v. Towne, 98 Mass., 567, 96 Am. Dec., 682; Hoverson v. Noker, 60 Wis., 511, 19 N. W., 382, 50 Am. Rep., 381.

The case of Meers v. McDowell (Ky.), supra, is a holding by the court that a parent who permits his child to have possession of a deadly weapon, when, from youth or mental weakness or the use of intoxicants, he is incompetent to be intrusted with it, and the parent knows the danger, or in the exercise of reasonable care should know it, is liable for injuries inflicted upon other persons by the child's discharge of the gun. In that case the deadly weapon was a regular rifle.

In the case of Carter v. Towne (Mass.), supra, it was held that one who sells and delivers gunpowder to a child of tender years, knowing that the child has neither experience nor knowledge in its use, and was an unfit person to be intrusted with it, is responsible for the injuries sustained by the child by exploding it, in ignorance of its effects, and using that care of which he is capable.

An examination of the case of Smith v. Salvaggio discloses that the court was there dealing with a weapon recognized as a deadly weapon, a .22 rifle, with regular rifle cartridge ammunition. There are numerous authorities holding that to place a deadly weapon, such as a regular rifle, in the hands of a very young child, and permit a child of tender years to have such a weapon in his possession and to be permitted to use it generally and to fire it generally, is negligence upon the part of the parent. Pollack on Torts, p. 33; Meers v. McDowell, supra; Binford v. Johnston, supra; Hoveron v. Noker, supra; 46 C. J., 1332; Broadstreet v. Hall, 168 Ind., 192, 80 N. E., 145, 10 L. R. A. (N. S.), 943, 120 Am. St. Rep., 356.

In the annotation to Broadstreet v. Hall, 10 L. R. A. (N. S.), page 944, it is stated:

"A parent is not guilty of actionable negligence in giving his eleven-

year-old son an air gun by which BB shot can be fired." citing Harris v. Cameron, 81 Wis., 239, 51 N. W., 437, 29 Am. St. Rep., 891, and Chaddock v. Plummer, 88 Mich., 225, 50 N. W.. 135. 14 L. R. A., 675, 26 Am. St. Rep., 283. (The latter case being a boy nine years of age.)

In the headnote to Harris v. Cameron, supra, it is said:

"A parent is not guilty of negligence per se in buying and giving to his son, eleven years of age, an air-gun of the kind commonly used by boys as a toy, and shooting with force sufficient to kill or wound a small bird, or dent a board, or destroy the eye of a human being; and such parent cannot be held answerable. . . ."

In the same headnotes it is further stated:

"If the evidence in a cause is plain and positive, admitting of no doubt or controversy, the question of negligence is for the court as a question of law."

In the same case the court said. in the body of the opinion:

"The two main questions are: 1. Was the defendant guilty of an act of culpable negligence per se in buying this air-gun for his boy? 2. If so, could he have reasonably anticipated or expected such a dangerous and improper use of it by the boy? If it is held that the defendant was not guilty of an act of negligence per se in so buying the gun, then it becomes necessary to decide the second question.

"We are clearly satisfied that it was not an act of culpable negligence on the part of the defendant. The act or fact must be such that the negligence can be directly and logically inferred from it. . . . The defendant's negligence in buying this article for his son and giving it to him to use must mainly depend upon the nature and uses of the thing itself. What is it? It is called an 'air-gun.' A gun, in the usual sense, is a 'weapon which throws a projectile or missile to a distance; a fire-arm for throwing a projectile with gunpowder.' A weapon is 'an instrument of offensive or defensive combat; something to fight with.' Webster's Dict. . . .

"This air-gun is not a gun or a weapon in the above signification of the words; but called a 'gun,' imitative only of a real gun, to give it dignity to a boy, or to play soldier with. The bow and arrow, when put in the form of a cross-bow, is called a 'cross-gun,'—a plaything for boys. One of these will put out an eye, if so aimed; and so, too, as to many toys and playthings, perfectly harmless and inoffensive in themselves, but whose common use can be perverted into a dangerous use by design. There are very few of the most harmless toys which cannot be used to the injury of another."

Other authorities are cited in the opinion to support the conclusion reached that an air gun is not a dangerous instrumentality of itself, but is in fact a toy. We think this is clearly true. The fact alone that an injury may be inflicted by such a toy does not make of it a dangerous instrumentality in the sense that the term is generally used. A

pocket knife in the hands of an eight or nine year old boy could be so used as to inflict dangerous and serious injuries upon another boy, but can it be said that to permit a boy eight or nine years of age to have a pocket knife and to carry the knife around with him and to use it, is negligence upon the part of the parent. We think not. A baseball bat in the hands of an eight year old boy could be so used as to inflict serious injury on another small boy, and this is true of other instrumentalities that are generally recognized as harmless, and are harmless when properly used. We are therefore of the opinion that the fifth assignment of error must be overruled.

The seventh assignment is as follows: "The court erred in charging the jury as follows: 'Now, the jury will see that the declaration claims the defendants are liable because it was negligence to give this kind of instrument to a boy of that age; well, we have thrashed that question out and find the law to be, that it is not negligence on the part of the father and mother to give an eight year old boy a gun of this character.' "

The eighth assignment is also directed to a portion of the charge of the court, on the same subject, wherein the court charged the jury as follows:

"But the mere fact that he is eight years old, unless there is other evidence to show that he is known or ought to have been known to them as an irresponsible and reckless boy, they were not guilty of negligence in giving him the gun."

We think both these assignments of error must be overruled, and what we have had to say with reference to the fifth assignment is equally applicable to these two assignments.

██ ██ This brings us to a consideration of the question presented under the second, third, and fourth assignments. Each of these assignments go to the action of the court in excluding evidence sought to be introduced by plaintiff to prove specific instances of misconduct, and one fight that this little boy had engaged in. This was introduced, or sought to be introduced in support of the amendment to the declaration which charged that this boy was irresponsible, vicious, and bad, which was known to the parents or should have been known to them, and that to give a boy of this type and character an air gun was negligence, and would take it out of the general rule. This evidence was not offered by way of cross-examining character witnesses for the defendant, but these specific acts of alleged misconduct were sought to be proved as an independent matter by plaintiff's witnesses. We think this evidence was properly excluded for two reasons. First, because character and reputation cannot be proved by specific acts. It is competent to prove the general character and reputation of the boy for being vicious, irresponsible, and high tempered. Second, it was not shown that the parent ever had any knowledge of the specific

acts of misconduct sought to be proved. If it be admitted that this boy had on other occasions engaged in a boyish fight with a neighbor boy, or that he had on one occasion threatened to shoot another boy with the air rifle, or the other acts of alleged misconduct, it was not shown that this was a part of his general reputation, nor was it attempted to be shown that the parents ever had any knowledge of the specific acts referred to. If it was a part of the general reputation and character of this boy that he was violent, high tempered, vicious, and irresponsible, the parents would have been chargeable with notice. The plaintiff did not offer to prove by witnesses that the boy, Eddie Creech, had a bad reputation in the community. However, witnesses testified in behalf of defendant that his character and reputation were good.

We are therefore of the opinion that the evidence offered of specific acts of misconduct by this little boy on other occasions, where knowledge of the same was not brought to the attention of the parents, was properly excluded.

The sixth assignment of error presents the question that the court erred in sustaining objection to the following question asked Thomas W. Creech, the father of Eddie Creech, on cross-examination:

"Q. Did you know it was a part of his reputation that he drew his rifle on Jimmie Highsaw the day he did Bobbie, and told him to put his hands up, and put his rifle up in his face?"

Objection to the above question was sustained, and the court proceeded to make some comment to the jury, stating his reasons to the jury for excluding the evidence. The action of the court in commenting at some length to the jury the reason for excluding this evidence is also challenged as error under this assignment. The court stated:

"The objection is sustained. Gentlemen of the jury, I have ruled out of this case evidence of specific fights, or quarrels, or rows, that this Eddie had. It is not proper in a case of this kind. Now, Mr. Crabtree is asking this witness various things, as though there was evidence before the court. He is asking if he knew it was a part of the boy's reputation that he did something, and didn't do something, and that he did this, that and the other. The court thinks it is proper to warn the jury not to consider questions asked as being evidence of a fact in the case. There is no evidence before this jury, and this jury must not consider that there is any, of any fight that Eddie ever had or any particular thing that he did or that it is claimed that he did that he ought not to have done. We must try a case by the rules of law, and the rule of law that is applicable to this lawsuit is, whether this boy's general nature and disposition was such as that a different rule applied to him, and that his parents ought to have known that this particular boy should not be entrusted with this air gun."

The court proceeded further to instruct the jury not to consider any reference made to specific acts of misconduct. The court stating: "It is really a question of the general reputation of this boy, whether it was good or bad."

Under this assignment there are two questions made, the criticism of the court in excluding the question above quoted, and in declining to permit the witness to answer. We think that it was properly excluded in the form the question was asked. In the first place, the witness was not asked if he knew that his son had on the same day attempted to shoot another boy with the air gun. The question was if he did not know that it was the reputation of the boy that he did try to shoot Jimmie Highsaw with the air gun on the same day that he shot the other boy, resulting in the injuries sued for. A more conclusive reason why this was not a competent or material question was that he was inquiring if he did not know that it was the reputation of the boy that he did attempt to shoot another boy on the same day that he did shoot plaintiff. It is not what he knew about any misconduct of the boy after this shooting occurred. It is what he knew of the boy's disposition prior to the time of this shooting that would be material.

On the other question presented under this assignment, viz., the comment of the court to the jury on this character of evidence, we find from the record that during the progress of the trial witnesses had been questioned by plaintiff's attorney on certain specific acts of misconduct of the boy, and objection to this evidence had been sustained by the court, after argument had been made by counsel. This occurred in the presence of the jury. We think it therefore not improper that the trial judge should instruct the jury that any specific acts of misconduct should not be considered by the jury, and the court at some length admonished the jury that any suggestion of fights or quarrels or other specific acts should not be considered. We do not think this was error.

In the general charge to the jury the court instructed the jury fully on the question that if this boy was shown to be irresponsible, vicious, high tempered, and this was known to the parent, or should have been known to them, that it would be negligence upon their part to give to this boy the air rifle and to permit him to use it, and for which they would be liable for the injury sustained by plaintiff, if this was shown by a preponderance of the evidence. There was some conflict in the evidence on that question. Mrs. Highsaw testified that soon after the accident in a conversation with Mrs. Creech, that Mrs. Creech stated to her that she regretted that they had given this air rifle to the boy as a Christmas present, that she knew that he was high tempered, and was afraid that such an accident might result by giving him the air gun. This was the only evidence offered to show

that the defendants, or either of them, knew or considered that the boy had a bad disposition, or that he was high tempered, or vicious, or that he was unlike other boys generally of his age. Mrs. Creech denied that she made this statement to Mrs. Highsaw, but admitted that she had expressed regret that they had given the boy the air gun since it had resulted in the injury to Mrs. Highsaw's son. This question was fairly submitted to the jury, under a proper instruction by the court, and the jury by its verdict resolved the question and issue in favor of the defendants.

This was an unfortunate incident. This air rifle had been given to this little boy as a Christmas present, and he, with other children in the vicinity, were accustomed to play together. It appears that four or five other boys of about his age were given air rifles as Christmas presents at the same time, and that they were accustomed to play together in the same neighborhood. There is a conflict in the evidence as to whether Eddie Creech willfully shot the air rifle at plaintiff. However, in the absence of a statute, the law is well settled that a parent is not liable for the torts of his minor child as a general rule. 46 C. J., 1329; King v. Smythe, 140 Tenn., 217, 204 S. W., 296, L. R. A. 1918F, 293.

It results that we find no error, and the assignments of error are accordingly overruled and the judgment of the lower court is affirmed. Appellant will pay the cost of this appeal.

Anderson and Ketchum, JJ., concur.