JAMES EDWARDS

*v.*

STATE OF TENNESSEE

(*Nashville*, December Term, 1956.)

Opinion filed July 29, 1957.

Looby & Williams, Nashville, for plaintiff in error.

Thomas E. Fox, Assistant Attorney General, for the State.

Mr. Justice Tomlinson delivered the opinion of the Court.

While State Highway Patrolman Morris was standing on the edge of State Highway No. 70 he was struck and instantly killed by an automobile being driven by James Edwards, who was drunk. Edwards was convicted of murder in the second degree, and has appealed.

A homicide of this character, generally speaking, is either involuntary manslaughter, *Keller v. State,* 155 Tenn. 633, 299 S.W. 803, 59 A.L.R. 685, or second degree murder, *Owen v. State,* 188 Tenn. 459, 221 S.W.2d 515, and *Rogers v. State,* 196 Tenn. 263, 265 S.W.2d 559, dependent upon the facts of each particular case. It is insisted in behalf of Edwards that there are no facts in this case from which the jury could reasonably infer malice; therefore, that Edwards' offense is involuntary

manslaughter. The theory of this insistence is that Edwards was so drunk at the time as not to know what he was doing; hence, that, necessarily, the element of malice is absent.

In a homicide case "it is murder though the perpetrator was drunk. * * * Hence a party cannot show that he was so drunk as not to be capable of entertaining a malicious feeling. The conclusion of law is against him." *Atkins v. State,* 119 Tenn. 458, 481-482, 105 S.W. 353, 359, 13 L.R.A., N.S., 1031. Therefore, the question here is whether facts justifiably deducible from the evidence permit a finding by the jury of malice upon the part of Edwards.

At a point on State Highway No. 70 a short distance west of the corporate limits of the town of Lebanon, Patrolman Morris accompanied by a friend, Tommy Knowles, stopped for an official purpose a car driven east by soldier Sanford. When the soldier's car was brought to a stop its left rear wheel was thirteen inches south of the edge of the paved portion of the highway, and facing east, towards Lebanon. The car driven by patrolman Morris was parked behind it faced in the same direction and about the same distance from the paved portion of the highway. Knowles remained seated therein.

Patrolman Morris stood on the ground at the left front door of the soldier's car and examined his driver's license, etc. He had just returned these documents when there passed traveling towards Lebanon an automobile at a speed estimated at between 50 to 60 miles per hour.

It passed the patrol car "with a great gust" at a speed which "raised the side of it up". It then struck and knocked patrolman Morris a distance of 45 feet east of the soldier's car. Before striking Morris, as Morris stood on the ground at the left front door of the soldier's automobile, Edwards' automobile scraped the left rear fender of the soldier's car and on up the body of the soldier's car to where the patrolman was standing. It necessarily, therefore, was traveling with its right wheels on the right shoulder of the highway since the left wheels of the soldier's car were thirteen and fourteen inches, respectively, over on that car's right hand shoulder of the road.

Edwards did not stop his car though he told the sheriff the next morning that he "knew he hit something but didn't know what".

Edwards was pursued by Knowles in the patrol car, but was unsuccessful in efforts to stop him, until he forced Edwards' car to the shoulder of the road. Edwards was so drunk that the officers doubt that he understood what was then being said. It was there that his wife said "I tried to get you to stop and you wouldn't do it",—a remark to which Edwards made no response.

██ ██ Since the court is permitted to know what the general public knows, it takes judicial knowledge of the fact that Highway No. 70 leading from Nashville to Lebanon and on east is a paved highway upon which traffic is very heavy. This highway from the point where Morris was struck is level for a distance west (towards Nashville) for more than a mile. It was from the west that Edwards was driving. The rear lights of the two

parked automobiles, and the spot light of the patrol car, were burning. It was between 11 and 11:30 P.M.

Since no evidence was offered in behalf of Edwards other than in an unsuccessful effort to establish a reputation of sobriety, it is not known as to when Edwards began on this occasion to drink. It is permissible, however, to conclude (1) from the evidence of the character witnesses offered by him that he lived some where in the vicinity of Lebanon and (2) was thus returning to his home at the time he ran Morris down.

 It is inconceivable that a man can get as drunk as Edwards was on that occasion without previously realizing that he would get in that condition if he continued to drink. But he did continue to drink and presumably with knowledge that he was going to drive his car back to, or close to, Lebanon over this heavily traveled highway. He knew, of course, that such conduct would be directly perilous to human life. From his conduct in so doing, it was permissible for the jury to imply "such a high degree of conscious and willful recklessness as to amount to that malignity of heart constituting malice." *Owen v. State,* 188 Tenn. 459, 468, 221 S.W.2d 515, 519.

The facts mentioned brought into the deliberations of the jury the rule that: "The act of a motorist may fall within the cases of murder in such a manner as to evince a depraved mind, as where one voluntarily becomes intoxicated while driving a car, and then drives on the streets of a city at a high rate of speed, heedless of pedestrians or of his acts." *State v. Trott,* 190 N.C. 674, 130 S.E. 627, 630, 42 A.L.R. 1114, 1119.

The case at bar is "on all fours" with *Rogers v. State,* 196 Tenn. 263, 265 S.W.2d 559, 560. The drunken driver there ran his automobile over, and killed, two people on the streets of Waynesboro. On appeal from his conviction of murder in the second degree his sole insistence was that he was so drunk as to be unconscious of committing any unlawful act; hence, "no malice shown, either express or implied". The Court rejected this insistence in accordance with the rules above stated and then added that:—"It would be a mockery of the law for one thus guilty of violating the criminal laws of the State, enacted for the protection of human life, to say he could not foresee the consequence of his act."

█ Edwards requested the Court to instruct the jury that he could not be convicted of second degree murder because he was so drunk "at the time as not to know what he or she was doing". The action of the Court in refusing to so instruct the jury is assigned as error. Counsel made this request for Edwards under a misconception of the law, as hereinbefore set out.

The court charged the jury that if it found that Edwards while in a drunken condition, or partly so, drove his automobile over, and killed, Morris he would be guilty of murder in the second degree or involuntary manslaughter as the jury may decide "regardless of his intention * * *". The use of the expression "regardless of his intention" is assigned as prejudicial error.

Following the word "intention" in the quotation is a comma and the instruction of the Court then continues as follows:

"for it is not necessary to show an unlawful intention, for the intent is necessarily embraced in the wrongful act. If the act which causes the death is *malum in se,* bad in itself, such as driving an automobile while under the influence of an intoxicant the criminal intent is supplied from the very nature of the act, and it is not necessary that it be shown that death was the natural and probable result of the act."

■ ■ It is clear from a reading of the instruction as a whole that the Court had reference to "the criminal intent necessary to render one punishable for homicide." The Court was saying to the jury that when an unlawful act is *"malum in se"* a criminal intent is supplied by the very doing of the act. Hence, in order to convict Edwards of either involuntary manslaughter or second degree murder, as the case might be, it is not necessary to show that death was the natural and probable result of the criminal act, *malum in se.* See *Keller v. State, supra,* 155 Tenn. 636, 299 S.W. 803.

■ It is said that the Court erred in charging the jury that the wilfully becoming drunk, or partly so, and driving an automobile while in that condition "with knowledge that driving in such a condition was perilous to human life would constitute murder in the second degree". This is assigned as error on the ground that it was for the jury to determine from all the circumstances whether the element of malice essential to murder in the second degree might be implied.

Here again is demonstrated the attorney's erroneous opinion that the presence of malice is negatived by the fact that "there was abundant evidence that he was so

drunk as not to be conscious of any impending peril at the time of the alleged homicide''.

The instruction so given was correct. Immediately following it is the instruction as to the circumstances under which the act of Edwards may be involuntary manslaughter.

■ ■ When the charge as a whole is considered, rather than isolated clauses therein, it is clear that the jury was given to understand that it was for it to determine whether Edwards' act amounted to second degree murder or involuntary manslaughter, or no offense at all. The jury could not have been misled by the instructions, and its verdict is not contrary to the preponderance of the evidence.

■ Finally, it is said that the punishment is so excessive as to show that the verdict was the result of passion, etc. The crime which Edwards committed was one directly perilous not only to the person he killed, but also directly perilous to the life of every person who happened to be on that heavily traveled highway at the same time Edwards, in his beastly drunken condition was thereon, a condition into which he necessarily knew he was getting. No extenuating circumstance is offered in evidence. The punishment was within the limitations of the law. This Court is not able to say that the jury was motivated by passion, prejudice or caprice in fixing that punishment at the amount specified in its verdict.

Affirmed.