RICHARD L. HOLMES, Retired Appellate Judge.
This is a personal injury case.
Cathy Pendergrass and her minor son, Tracy Elledge, appeal from a summary judgment in favor of John Mathis and Annette Mathis.
Our review of the record reveals the following pertinent facts: On August 6, 1993, Tracy Elledge, Jeremy Wilkes, and two other boys were voluntarily engaged in a game of “war.” The boys were apparently exchanging shots at one another, when one of the BB’s from Jeremy’s air rifle struck Tracy in the eye.[1] The accident occurred while the boys were at the Mathises’ residence. An *318 nette Mathis is Jeremy’s mother. John Mathis was Jeremy’s step-father at the time the accident occurred. The Mathises are now divorced.
Thereafter, Pendergrass, individually, and as next friend and mother of Tracy, filed a complaint against John Mathis, individually, and Annette Mathis. The complaint sought damages under the theories of negligent supervision and negligent entrustment. We note that the complaint did name other defendants. However, those defendants are not germane to this appeal. The Mathises filed individual answers, wherein they each alleged contributory negligence and assumption of the risk.
On January 2, 1996, the Mathises filed a motion for a summary judgment, along with their documentation in support thereof. Pendergrass and Tracy responded with a brief in opposition, along with their documentation in support thereof.
On January 12, 1996, the trial court granted the Mathises’ summary judgment motion. Pendergrass and Tracy appeal.
Rule 56(c), Ala. R. Civ. P., provides that a summary judgment is appropriate in situations where no genuine issue of a material fact exists and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher, 636 So.2d 682 (Ala.Civ.App.1994).
Once the movant makes a prima facie case showing that no genuine issue of a material fact exists, then the burden shifts to the non-moving party to present substantial evidence regarding the existence of a genuine issue of a material fact. Porter, 636 So.2d 682.
At the outset we note that Pender-grass and Tracy failed to present an argument in regard to their claim on negligent supervision. It is well-settled law that the failure to argue a specific issue in a brief that is submitted to the appellate court is the equivalent of a waiver of that issue on appeal. Ex parte Riley, 464 So.2d 92 (Ala.1985).
Therefore, the only issue on appeal is whether Pendergrass and Tracy presented substantial evidence to support their theory of negligent entrustment.
In Brown v. Vanity Fair Mills, Inc., 291 Ala. 80, 82, 277 So.2d 893, 895-96 (1973), our supreme court stated the following:
“Negligent entrustment is defined in Restatement (Second) of Torts § 390, as follows:
“ ‘One who supplies directly ... a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.’
“The elements of negligent entrustment have been listed as follows:
“ ‘(1) Proof that the entrustee was incompetent, inexperienced or reckless; (2) that the entrustor “knew or had reason to know” of the entrustee’s condition of proclivities; (3) that there was an entrustment of the chattel; (4) that the entrustment created an appreciable risk of harm to the plaintiff and a relational duty on the part of the defendant; (5) that the harm to the plaintiff was “proximately” or “legally” caused by the negligence of the defendant.’ ”
In support of their contention that Jeremy was not incompetent, inexperienced, or reckless, the Mathises introduced Jeremy’s testimony. Jeremy testified that he acquired his Crossman air rifle when he was approximately twelve years old. He was sixteen years old when the accident occurred. Jeremy stated that, all of his life, his natural father had instructed him on how to operate guns and how to operate them safely. Jeremy further testified that he did not fire his air rifle at Tracy’s eye or head. Jeremy’s account of how the accident occurred is as follows:
*319 “Q. Going to August the 6th of 1993, tell me when was the first time that you saw Tracy Elledge on that day?
“A. He walked through my yard and across the street.
“Q. And what, if anything, did you do when you saw him walk across the yard to the street?
“A. I opened my door and shot air out of my gun out the door. I just dry fired it or whatever you want to call it.
“Q. And which direction did you shoot this air out of your gun?
“A. I shot it out the door just making a noise.
“Q. Well, did you shoot it in the direction of Tracy and his friends or your friends?
“A. No.
“Q. When is the next or — what did you do next?
“A. I shut my door and they came over there in the yard and they were like hiding beside my house, and I walked outside and one of them shot me in the back. I went back inside and I went to the other door and I opened it up and I shot air in my garage. And then they started shooting at the house and they shot the door and the walls in there. And then I put a BB in my gun and I shot it out and it hit the concrete and hit [Tracy] in the eye.”
(Emphasis added.)
The Mathises then offered Tracy’s téstimo-ny. Tracy testified that he and his friends were just having fun on the day of the accident and that they had never played “war” with air rifles before. Tracy further testified that he did not have any reason to believe . that Jeremy was actually trying to shoot him since they were just playing around. Tracy could not say whether Jeremy raised the air rifle to a position that would indicate that he was aiming. In addition, Annette Mathis testified that she was not at home on the day the accident occurred. She further testified that she had never known Jeremy to fire his air rifle at anyone before.
Pendergrass and Tracy failed to present any evidence that would indicate that Jeremy was incompetent, inexperienced, or reckless. Instead, in their brief Pendergrass and Tracy made the general proposition that “[tjaking aim and shooting at someone’s eye or head with a bb or pellet gun is definitely reckless.”
In Cooter v. State Farm Fire & Casualty Co., 344 So.2d 496, 497 (Ala.1977), our supreme court stated, “the manifestation of the incompetence of the user is an essential element to the gravamen of the negligent en-trustment action. That is to say, but for the incompetent ... misconduct in the use of the [air rifle], no liability could result to the entrustor.”
Next, Pendergrass and Tracy contend that the Mathises knew, or had reason to know, of Jeremy’s condition of proclivities since Jeremy had never received any formal safety program concerning guns and/or dangerous instrumentalities. However, Pendergrass and Tracy failed to produce any evidence that an air rifle is, in fact, a dangerous instrumentality that would require a formal mode of safety instruction.
We would note that the category of “chattels” in regard to negligent entrustment claims has essentially been limited to automobiles, boats, firearms, and explosives. See Wilbanks v. Brazil, 425 So.2d 1123 (Ala.1983). After reviewing the relevant case law and finding no controlling precedent on whether there is a cause of action based on the negligent entrustment of an air rifle, we note the following finding made by the Tennessee Court of Appeals. In Highsaw v. Creech, 17 Tenn.App. 573, 69 S.W.2d 249 (1933), the court, after reviewing the relevant ease law from other jurisdictions, concluded that an air rifle was not a dangerous weapon or dangerous instrumentality. Instead, the court held that an air rifle was a toy and that the parents of a nine-year-old child were not negligent in giving an air rifle to their child.
Here, we note that we make no conclusion as to whether an air rifle is, in fact, a dangerous instrument. Rather, we conclude only that, in this instance, there was no evidence or proof that an air rifle is a “dangerous instrument.”
In light of the above, we conclude that Pendergrass and Tracy failed to present any substantial evidence to support their *320 theory of negligent entrustment. Instead, the majority of their brief relies on general statements, which are not supported by any specific facts. Rule 56(e), Ala. R. Civ. P., provides, in pertinent part, that once the movant has supported his position that a summary judgment is appropriate, the non-movant “may not rest upon the mere allegations ... of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial.” Consequently, the trial court properly entered the summary judgment in favor of the Mathises.
The judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.
MONROE, J., concurs in the result.
CRAWLEY, J., concurs in the result with opinion.

. We would note that in their brief, Pendergrass and her son, Tracy, referred to the gun that Jeremy used, which injured Tracy, as a "BB” or "pellet” gun. In their conclusion, they stated that "[i]t is clear ... that a bb gun would be a dangerous instrumentality." In essence, Pender-grass and her son, Tracy, could not say whether the gun was, in fact, a "BB" or "pellet” gun. Jeremy, however, testified that the only gun he owned at the time of the accident was a Cross-man air rifle. Jeremy also testified that he loaded the air rifle with a BB before firing the shot that injured Tracy. Therefore, for purposes of this appeal, we will refer to the gun as an air rifle.