Douglas Lanier

*v.*

State of Tennessee

410 S.W.2d 411.

(*Jackson,* April Term, 1966.)

Opinion filed December 9, 1966.

HENRY V. SUTTON, Memphis, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, Nashville, for the State. JEWETT MILLER and CLAY SAUNDERS, District Assistant Attorneys General, Memphis, prosecuted the case for the State in the trial court.

Mr. Chief Justice Burnett delivered the opinion of the Court.

The plaintiff in error was convicted of grand larceny and sentenced to serve not more than three years in the State penitentiary. This conviction was seasonably appealed, assignments of error and briefs were filed and arguments have been heard.

The assignments, twenty-one in number, in view of the disposition that we think must be made of the case, will not be taken up seriatim, and we will not consider most of them for the reason the cause must be reversed and remanded.

The assignments which are considered are assignments (6), (8), (12) and (15), and these may be grouped together as all of them arrive at one conclusion as to why there was error below. These assignments taken together contend that the constitutional rights of plaintiff in error were violated in that he was convicted upon evidence obtained by means of an illegal search; that he was held for an unreasonable period of time without an opportunity to contact an attorney; and that statements made by him to officers in Louisiana were used against him in the trial without his being advised of his right to remain silent and to have counsel.

The trial in this case took place on October 20, 1965. The record shows that on May 2, 1965, the plaintiff in error was in his home with his wife and children in Baton Rouge, Louisiana, when officers of the Sheriff's Department for that parish came to his home and confronted him with a matter involving checks. The plaintiff in error agreed to go to the police station in Baton Rouge and, after finishing his evening meal, he drove in the

Oldsmobile in question to the police station, followed by officers from the Sheriff's Department. After being followed to the police station plaintiff in error was questioned regarding the aforesaid checks, and then the investigation being conducted by the Sheriff's Department in Louisiana shifted from the checks to an inquiry regarding the alleged stolen status of the automobile which was in the possession of the plaintiff in error and which he had driven to the police station.

The officers of the Sheriff's Department of Louisiana make no claim, or they say they didn't, or had forgotten whether they did or not, that this man was advised of his constitutional rights, not to make a statement or that he was entitled to a lawyer or anything of the kind and that if he did make any statement it could be used against him.

In the trial of this case it was shown that through certain information that these officers had gotten at the time of this investigation of the checks, the automobile that he had driven down to the station had been stolen. This information was gained through finding certain papers with reference to the title to the car and finding the license plates were stolen from another car in another place and things of the kind, and it was thus found that the car had been stolen in Memphis. As a result of this information the man was taken back to Memphis and the present trial occurred.

In the trial of this case, over the objection of the plaintiff in error, testimony was admitted of statements made by the plaintiff in error while in the custody of these Louisiana officers. One of the State's witnesses was permitted to testify that the plaintiff in error refused to make any further statements after being confronted with

the alleged report that the license plates on said automobile were stolen. At no time had the plaintiff in error been advised of his constitutional rights.

It is also shown that while in the custody of the Louisiana officers his automobile was searched, without a search warrant at a time when a search was not necessary, nor was it incidental to the arrest and investigation the officers were making in reference to the checks. As a result of this search a warranty book was found in the glove compartment of the automobile which connected said automobile with an automobile company in Memphis. Inquiries were therefore made to the Memphis Police Department and further information was obtained out of which the plaintiff in error was ultimately indicted for the alleged theft of the car for which he was here tried. It is perfectly apparent that all this information resulted from the information received by the search of this car.

It is likewise alleged that after the man was taken to Memphis he was not permitted to make a telephone call for at least nineteen hours, during which time he was interrogated by the police officers. The only evidence in the record we can find on this subject was the testimony of a member of the Memphis Police Department who testified that he first talked with plaintiff in error on June 11, 1965, and that he informed him of his right to counsel at that time and of his right to remain silent; that if plaintiff in error had asked to use the telephone he was permitted to do so. On the date of June 11, 1965, he was taken before a General Sessions Judge and bound over to the grand jury. About three months after he was bound over, the case was set for trial. There is no evidence in the record as to how long he remained in jail

prior to the time he was given an opportunity to make a telephone call and being advised there by the Memphis Police of his right to counsel. The plaintiff in error does not contend that he did not have an opportunity to obtain counsel while in custody in Louisiana between May 2 and the date of his arrival in Memphis. He was though brought to Memphis some days before the date on which this police officer said he was permitted to use the telephone, etc., on June 11. This in a way lends credence to the argument of his counsel that he was not permitted to use the telephone or anything of the kind prior to what this officer said was done.

In the trial of this cause these Louisiana police officers were permitted to testify that plaintiff in error made statements to them while in custody, being charged with a felony, but they do not say that he was advised of any of his constitutional rights. The officers were likewise permitted to testify about additional information gained as a result of their discovery of the warranty book in the automobile, which resulted in an illegal search and seizure.

Part of the contention of the State in the trial of this case was based upon certain of these statements made by the Louisiana officers to the plaintiff in error to which he made no answer to the effect that by not answering or by his silence this amounted to an admission. Clearly, all of this happened and the man was not advised in any way of his constitutional rights.

When statements which tend to incriminate him are made to the accused and used against him when he does not reply thereto under our authorities his failure to deny is admissible as evidence of his acquiescence in

the truth of the statement. *Camper v. State,* 187 Tenn. 511, 216 S.W.2d 18. But the *Camper* case and such authority is not controlling on the point when one's constitutional rights have been violated.

 Under this record it is shown that this inquiry about this man involved certain checks and did not in any wise involve the automobile that he voluntarily drove to the Louisiana police station. While this investigation was going on a search of this automobile was made. This search was in no way connected with or incidental to the arrest or information that was being elicited from this man about the checks. Such a search then was clearly unreasonable and any evidence secured thereby would not be subject to be used in the prosecution of this plaintiff in error because the search was not made incident to the arrest. *Elliott v. State,* 173 Tenn. 203, 116 S.W.2d 1009; *Bromley v. State,* 203 Tenn. 194, 310 S.W.2d 432. In the *Elliott* case this Court said:

"It will be seen from the foregoing that in declaring the authority of the arresting officer to search and seize, the authority is always limited to (1) offensive weapons and tools of escape and (2) evidence of guilt of the offense for which the lawful arrest has been made."

Thus it is, we feel that the search, under such circumstances as here made, was illegal.

 Counsel for the State takes the position that none of the constitutional rights of this man was violated because of the search of the automobile and the seizure of the warranty therefrom, because plaintiff in error had no interest or right to possession of the automobile or the warranty indicating that the owner of the automobile

resided in Memphis, Tennessee. He cites as authority for this reasoning our case of *Bowman v. State,* 211 Tenn. 38, 362 S.W.2d 255. We think though that the Supreme Court of the United States in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, held to the contrary. In the *Jones* case, the majority opinion holds that the person accused in that case had a "standing to make it" regardless of whether or not he had a claim to the property. This case arose in the Federal court in Washington on a motion to suppress certain evidence, and the court used this langauage at page 734 of the Supreme Court Reporter:

"No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched. As petitioner's testimony established Evans' consent to his presence in the apartment, he was entitled to have the merits of his motion to suppress adjudicated."

■ We gather from reading this opinion, if we understand it, the Court was there holding if the search of premises did secure evidence of the crime sought to be charged, even though the person did not claim the premises, that if it was going to be used against him he had the right to raise the question of the legality of the search.

The search here made and the evidence secured was on a similar kind of illegal search as that made in *Ellis v.*

*State,* 211 Tenn. 321, 364 S.W.2d 925, wherein we in following *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1018, held that such a search and the evidence obtained thereon was not admissible in evidence against the defendant. Tennessee Constitution, Art. 1, sec. 7, United States Constitution, Amendment Four.

■ We think, too, that the evidence of these Louisiana officers, and the things done there without this man being advised of his constitutional rights, without a lawyer and all of those things, were contrary to the holding of the Supreme Court of the United States in *Escobedo v. State of Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, which has now been clearly spelled out by the Supreme Court of the United States in *Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, when the court in that case says that the purpose and meaning of *Escobedo* was that:

"* * * the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent that any statement he does make may be used as evidence

against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." 86 S.Ct. 1612.

This rule, as annunciated, states what the meaning of *Escobedo* is. It is held in *Johnson v. State of New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, that this should be applied in those cases in which the trial began after June 22, 1964, the date of the *Escobedo* opinion. The trial in this case comes within such requirement, as it began in October, 1965. Thus it is, under the meaning of *Escobedo*, as spelled out above by the same court, the writer of the opinion clearly shows that under the facts of the instant case the constitutional rights of this plaintiff in error have been violated. This being true, it is our duty, and we must reverse and remand this case. It is so ordered.